ORIGINAL

RRH & ASSOCIATES
ATTORNEYS AT LAW LLLC

ROBIN R. HORNER  #2725-0
P.O. Box 3727
Honolulu, Hawaii  96812-3727
735 Bishop Street, Suite 410
Honolulu, Hawaii  96813
Tel. No. (808) 523-5520
Fax No.: (808) 523-7924
E-Mail: rrhattorneys@yahoo.com

Attorneys for Plaintiff
DARRELL-LYNN PUAALA
SILVA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 10 2010

at 3 o'clock and 43 min. P M,
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARRELL-LYNN PUAALA SILVA, | CIVIL NO. ~~10-00097 JMS/BMK~~ CV10 00523 DAE KSC |
| Plaintiff, | COMPLAINT; DEMAND FOR TRIAL BY JURY; SUMMONS |
| vs. | |
| WEST COAST LENDING GROUP, INC.; PRIVATE CAPITAL GROUP, INC.,; PARKER ENLOE; JOHN DOES 1-10; JANE ROES 1-10; DOE CORPORATIONS, PARTNERSHIPS OR OTHER ENTITIES 1-10, Defendants. | |

COMPLAINT

Plaintiff, DARRELL-LYNN PUAALA SILVA (hereinafter referred to as

"Plaintiff" or "Silva"), by and through her attorneys, RRH & ASSOCIATES,

ATTORNEYS AT LAW LLLC, bring the following Complaint against Defendants

WEST COAST LENDING GROUP, INC.; PRIVATE CAPITAL GROUP, INC.;

PARKER ENLOE; JOHN DOES 1-10; JANE ROES 1-10; DOE CORPORATIONS,

PARTNERSHIPS OR OTHER ENTITIES 1-10 (hereinafter collectively referred to as

the "Defendants"), and allege and aver as follows:

INTRODUCTION

1.      This action is brought by Plaintiff as a consumer concerning a predatory

mortgage loan that was made to strip away her home equity by luring an unsophisticated

and vulnerable borrower into an unaffordable loan that would ultimately result in

foreclosure and the loss of Plaintiff's home located at 51-328 B Kamehameha Highway,

Kaaawa, Hawai'i 96730 (hereafter referred to as the "Property").

2.      This Complaint seeks recovery of Plaintiff's home (the Property) which

apparently has been wrongfully foreclosed, as well as damages, injunctive and other

relief, reasonable attorneys' fees and costs for fraud, and violations of various federal and

state laws, including, but not limited to, the Hawaii unfair and deceptive trade practices

statutes, Hawaii Revised Statutes (hereinafter "H.R.S.") Chapters 480 and 481A.

3.      This Complaint seeks injunctive relief to the extent it is needed to avert

the likelihood of injury to Plaintiff during the pendency of this action and to preserve the

possibility of effective final relief.

JURISDICTION

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1337. The

supplemental jurisdiction of this Court under 28 U.S.C. § 1367 is also invoked over the

Counts of this Complaint which arise under H.R.S. Chapters 480 and/or 481A or assert

other state claims.  The amount in controversy exceeds $500,000.00.

<u>PARTIES</u>

5.    Plaintiff Silva is and was at all times material herein a natural person over the age of 18 who resides in the State of Hawaii.  Plaintiff is financially unsophisticated.

6.    Defendant WEST COAST LENDING GROUP, INC. (hereinafter individually referred to as "Defendant" or "WCLG") is and was at all times material herein a Nevada company.

7.    Defendant PRIVATE CAPITAL GROUP, INC. (hereinafter individually referred to as "Defendant" or "PCG") is and was at all times material herein a Utah corporation.

8.    Defendant PARKER ENLOE (hereinafter individually referred to as "Defendant" or "Parker") is and was at all times material herein a individual who is a resident of the State of Nevada, and who is or was an agent or employee of PCG and/or WCLG, and who is responsible for the acts and/or omissions described in this Complaint.

9.    Based upon information and belief, WCLG and/or PCG and/or Parker may claim to be the current owner and/or holder of promissory note and mortgage on said Property and/or may claim to be the current owner of the subject Property.

10.    Defendants JOHN DOES 1-10; JANE ROES 1-10; DOE CORPORATIONS, PARTNERSHIPS OR OTHER ENTITIES 1-10 are persons and entities that may in some manner have a claim or some interest in the real property described in this Complaint and/ may be participants in the acts and practices and/or be liable to Plaintiff for damages or other relief as set forth in this Complaint. Plaintiff has reviewed all documents available to her and has made a diligent and good faith effort to ascertain said persons' and entities' full names and identities, and Plaintiff has been unable to ascertain the identities of said Defendants. The names, capacities, and relationships of defendants

named as Doe Defendants will be alleged by amendment to this Complaint when they are known.

STATEMENT OF FACTS

11.    Plaintiff's cousin was selling her house and offered it to Plaintiff and her then significant other, George Waikola (hereinafter referred to as "George"), who purchased the subject Property on or about July 10, 2006 by means of an agreement of sale.

12.    The purchase price was $425,000.00 and Plaintiff made a down payment of $67,826.39.

13.    Plaintiff and George were to continue making payments under the agreement of sale until they could find other financing.

14.    Plaintiff and George saw a business solicitation by PCG that indicated among other things, that PCG provided loans to persons purchasing or refinancing their homes.

15.    Plaintiff and George called PCG to see if they could obtain a loan, explained that they had purchased a house under an agreement of sale and were seeking other permanent low interest financing.

16.    Parker, who represented himself, PCG and/or WCLG flew into Honolulu to meet with Plaintiff and George.

17.    Parker explained that he and other investors helped people to obtain loans to purchase homes and/or helped people refinance their loans.

18.    Plaintiff who is and was financially unsophisticated, placed her trust and confidence in PARKER and PCG to provide Plaintiff and George with a loan on terms

which were the most favorable considering their circumstances and finances and which they would be able to sustain over the life of the loan.

19.     Parker promised he could help Plaintiff and George.

20.     Parker did not have Silva and George sign a mortgage origination agreement.

21.     Parker flew back to the mainland and from the mainland had Plaintiff and George pay for at least 3-4 appraisals of the subject property.

22.     Parker did not explain why he needed so many appraisals.

23.     Parker did not provide Plaintiff and George with copies of any of the appraisals and did not provide any notice that Plaintiff and George were entitled to and could obtain copies of the appraisals.

24.     Parker and/or PCG and/or WCLG did not provide Plaintiff and George with an initial truth in lending statement, or a good faith estimate as to what their loan terms and costs would be.

25.     Parker and/or PCG and/or WCLG had loan and mortgage documents prepared and had these sent to Honolulu for Silva and George to sign.

26.     Parker did not explain the documents or terms of the loan and mortgage to Silva and George in any meaningful manner except to say that he put down information that he needed to in order for Plaintiff and George to obtain a loan, that these were not the final terms, they did not need to worry about this, and that they would have to refinance with him and/or PCG and/or WCLG and/or other lenders again.

27.     Silva and George signed documents and returned them to Parker and/or PCG and/or WCLG as instructed.  These documents were not signed before a notary.

28.     Completed, signed and dated documents were not returned to Silva and George.

29.     Thereafter, nothing further was explained to Silva or George and Parker and/or PCG and/or WCLG did not provide Silva and George with a final loan closing statement indicating the terms and costs of the loan.

30.     Silva and George asked Parker and/or PCG and/or WCLG for loan statements and they were not provided with any loan payment amounts or statements.

31.     At one point in time, Parker said they needed to make mortgage payments but would not tell them what they had to pay, and just told Silva and George to pay what they could.

32.     Silva and George made a couple of payments and kept asking for statements and did not receive any written statements. Parker finally told them words to the effect that they needed to make payments of $5000.00 a month which Silva and George could not afford.

33.     Parker would tell them they owed money but each time they spoke with him, the amounts allegedly owed kept changing without a consistent pattern.

34.     Parker would refer Silva and George to companies and they kept applying various companies in order to refinance their loan with Parker and/or PCG and/or WCLG.   Parker kept trying to have Silva and George refinance with greater and greater loan amounts. Apparently, Silva and George could not qualify for loan and/or they were never able to finalize any loan for reasons unknown to Plaintiff.

35.     Parker kept telling them they needed to pay for the loan, would not tell them what they owed, and kept telling them that if they could not pay, he and/or PCG

and/or WCLG would foreclose, get a deficiency judgment and force George and Silva into bankruptcy.

36.     While all of the above was going on, Plaintiff got hurt at work and needed medical treatment, was off work on worker's compensation and had reduced income.

37.     All the pressure that Parker and/or PCG and/or WCLG put on Silva and George, and all the confusion they caused concerning their "loan" affected the personal relationship between Silva and George, who ended up separating.

38.     Parker then put pressure on George to quitclaim his interest in the Property to Silva again threatening George with foreclosure, a deficiency judgment and bankruptcy.

39.     Based on information and belief, Parker wanted George out of the way so he could pressure Silva into selling the Property, leaving her with a total loss of all of Plaintiff and George's financial investment in the Property and with a reduced income almost guaranteed that Silva would not be able to maintain her ownership of the Property.

40.     Silva obtained a real estate agent to help her sell the Property based on instructions and threats from Parker.

41.     Silva had the agent contact Parker, and thereafter, the agent listened to whatever Parker told the agent, would not listen to Silva, and did not advise Silva of any of her rights concerning a sale of the subject Property.

42.     The real estate agent on instructions from Parker lied to Silva about the necessity to sell, offers that were made and allegedly refused by Parker and/or PCG and/or WCLG and Silva's rights to make counteroffers and which offers could or could not be accepted.

43.     Based on information and belief, numerous offers to purchase the Property were made and were refused by Parker which Plaintiff believes was for the sole benefit of Parker and/or PCG and/or WCLG who sought to obtain ownership of the Property for themselves and obtain the benefit of any and all equity in the Property to the detriment of Plaintiff.

44.     Finally, apparently a cash offer was made that Parker was pressuring Silva into accepting, and the real estate agent lied to Silva about the precise terms and deadlines to respond. Silva declined to accept that offer.

45.     Thereafter, based on information and belief, apparently Parker and/or PCG and/or WCLG filed a notice of intent to foreclose, however, the notice was never served on Silva.

46.     Contact was made with Parker to find out if a foreclosure notice had been properly filed and served, and Parker and his attorneys would not provide Silva with a copy of the notice and would not postpone any foreclosure to allow discussion as to how Plaintiff could preserve her interest in her home.

47.     Silva's attorney was later contacted by a different realtor who indicated among other things, that the realtor had been contacted by the lender who indicated they owned the Property through foreclosure and wanted to know if the realtor's client was interested in purchasing said Property.

## COUNT I

### VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT

48.     Plaintiff reaffirms and realleges the above paragraphs 1-47 inclusive hereinabove as if set forth more fully hereinbelow.

49.     In 1994, Congress enacted the Home Ownership Equity Protection Act ("HOEPA") which is codified at 15 USC section 1639 et seq. with the intention of protecting homeowners from predatory lending practices targeted at vulnerable consumers.  HOEPA requires lenders to make certain defined disclosures and prohibits certain terms from being included in home loans.  In the event of noncompliance, HOEPA imposes civil liability for rescission and statutory and actual damages.

50.     Plaintiff is a "consumers" and each defendant is a "creditor" as defined by HOEPA.  In the mortgage loan transaction at issue here, Plaintiff was required to pay excessive fees, expenses, and costs.

51.     Pursuant to HOEPA and specifically 15 USC section 1639(a)(1), each defendant is required to make certain disclosures to the Plaintiff which are to be made conspicuously and in writing no later than three (3) days prior to the closing.

52.     In the transaction at issue, defendants were required to disclose to Plaintiff no later than three (3) days prior to said closing that Plaintiff was not required to complete the loan merely because Plaintiff received disclosures or signed a loan application, that the lender will have a mortgage on Plaintiff's home and that Plaintiff could lose her home and any money she put into it, if she did not meet her obligations under the loan."

53.     Defendants violated HOEPA by numerous acts and material omissions, including but not limited to:

53.1.    (a) failing to make the foregoing disclosure in a conspicuous fashion;

53.2.   (b) engaging in a pattern and practice of extending credit to Plaintiff without regard to their ability to repay in violation of 15 USC section 1639(h).

54.     By virtue of the defendants multiple violations of HOEPA, Plaintiff has a legal right to rescind the consumer credit transaction which is the subject of this action pursuant to 15 USC section 1635.  This complaint is to be construed, for these purposes, as formal and public notice of Plaintiff's notice of rescission of the subject notes and mortgage.

55.     Defendants further violated HOEPA by failing to make additional disclosures, including but not limited to Plaintiff not receiving the required disclosure of the right to rescind the transaction.

56.     As a direct consequence of and in connection with Plaintiff's legal and lawful exercise of her right to rescission, the true "lender" is required, within 20 days of this notice of rescission to:

57.1.   (a)     Desist from making any claims for finance charges in the transaction;

57.2.   (b)     Return all monies paid by Plaintiff in connection with the transaction to the Plaintiff;

57.3.   (c)     Satisfy all security interests, including mortgages, which were acquired in the transaction.

57.     Upon the true "lenders" full performance of its obligations under HOEPA, Plaintiff shall tender all sums which the true "lender" is entitled.

58.     Based on defendants' HOEPA violations, each of the defendants are liable to the Plaintiff for the following, which Plaintiff demands as relief:

58.1.   (a)      Rescission of the mortgage loan transactions;

58.2.   (b)      Termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transaction;

58.3.   (c)      Return of any money or property paid by the Plaintiff including all payments made in connection with the transactions;

58.4.   (d)      amount of money equal to twice the finance charge in connection with the transactions;

58.5.   (e)      Relinquishment of the right to retain any proceeds; and

58.6.   (f)      Actual damages in an amount to be determined at trial, including

58.7.   Attorney's fees.

## COUNT II

### VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT

59.    Plaintiff reaffirms and realleges the above paragraphs 1-58.7 inclusive hereinabove as if set forth more fully hereinbelow.

60.    As mortgage lenders, defendants are subject to the provisions of the REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA"), 12 USC section 2601 et seq.

61.    In violation of 12 USC section 2607 in connection with the mortgage loan to Plaintiff, defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed.

62.     As a result of the defendant's violations of RESPA, defendants are liable to Plaintiffs in an amount equal to three times the amount of charges paid by Plaintiff for "settlement services" pursuant to 12 USC section 2607(d)(2).

63.     Section 3500.6 of RESPA requires lenders to provide a special information booklet at the time of loan application.

64.     The Special information booklet was not provided to the Plaintiff by defendants at the time of the loan application.

65.     As a result of the foregoing violations, defendants are liable to Plaintiff for actual damages, treble damages, such other damages as the court may award, together with costs of the action and reasonable attorneys' fees.

COUNT III

VIOLATIONS OF FEDERAL TRUTH-IN-LENDING ACT

66.     Plaintiff reaffirms and realleges the above paragraphs 1-65 inclusive hereinabove as if set forth more fully hereinbelow.

67.     Defendants failed to include and disclose the finance charge imposed on Plaintiff incident to the extension of credit to the plaintiffs and were required to be disclosed pursuant to 15 USC section 1605 and Regulation Z, section 226.4, thus resulting in an improper disclosure of finance charges in violation of 15 USC section 1601 et seq., regulation Z section 226.18(d).

68.     By failing to properly calculate and disclose the annual percentage rate ("APR") of the "loan", defendants are in violation of 15 USC section 1601 et seq., regulation Z. section 226.18(c), 18(d), and 22.

69.     Defendants failure to provide the required disclosures provides Plaintiff with the right to rescind the transaction, and Plaintiff, through this public complaint which is intended to be construed, for purposes of this claim, as a formal notice of rescission, hereby elects to rescind the transaction.

70.     TILA also requires initial disclosures to be issued within three business days of receipt of the loan application and of any changes to the terms of a loan program. Borrowers are typically entitled to a TILA disclosure concurrently with the Real Estate Settlement Procedures Act (RESPA) Good Faith Estimate.  The purpose of the early TILA disclosure and the RESPA Good Faith Estimate is to give the borrowers an opportunity to review the proposed terms and compare loan terms being offered by other lenders.  The documents provided to the borrowers by the lender did not include an initial truth in lending statement or a good-faith estimate.

71.     The failure to provide an initial TILA disclosure or a good faith estimate within three business days is a violation of TILA.

72.      Pursuant to TILA, defendants are liable to Plaintiff in amounts equal to the sum of actual damages and such additional damages as the court may allow, and the costs of action together with reasonable attorney's fees.

COUNT IV

BREACH OF CONTRACT

73.     Plaintiff reaffirms and realleges the above paragraphs 1-72 inclusive hereinabove as if set forth more fully hereinbelow.

74.     Parker and/or PCG and/or WCLG promised to provide Plaintiff with a loan that she could afford that would enable her to maintain her ownership of the Property.

75.     Parker and/or PCG and/or WCLG failed to provide Plaintiff with a loan that she could afford that would enable her to maintain her ownership of the Property.

76.     As a result of this breach of contract, Plaintiff has been damaged in amounts that shall be proven at the time of trial.

COUNT V

FRAUDULENT MISREPRESENTATION

77.     Plaintiff reaffirms and realleges the above paragraphs 1-76 inclusive hereinabove as if set forth more fully hereinbelow.

78.     Defendants knowingly and intentionally concealed material information from Plaintiff which is required to be disclosed to the Plaintiffs both before and the time of closing.

79.     Defendants also materially misrepresented material information to the Plaintiff with full knowledge by defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

80.     The omissions of material fact and/or the material misrepresentation of material facts include but are not limited to, the following:

80.1.   The failure of Parker and/or PCG and/or WCLG to follow usual and customary underwriting guidelines to qualify Plaintiff for her loan;

80.5.   Misrepresenting and/or concealing the true terms of the loan;

80.6.    Misrepresenting and/or concealing the true amount of interest Plaintiff would have to pay over the life of the loan;

80.7.    Concealing that property values were declining and would likely continue to do so in the foreseeable future making it difficult or impossible to refinance any loan;

80.8.    Concealing that Plaintiff would likely experience mortgage payment distress and had a high likelihood of defaulting on the note;

80.9.    Concealing that Defendants would provide negative reports to various credit agencies resulting in the lowering of Plaintiff's FICO scores with a resulting inability to obtain loans to refinance the toxic loan transaction that was provided to Plaintiff;

80.10.   Concealing that the laws regarding proper and timely loan disclosures is clear and known to lenders, and that the failure to provide this information to Plaintiff had to be deliberate and an attempt to fraudulently conceal Plaintiff's rights and remedies, including, the right of rescission.

81.    Under the circumstances, the material omissions and the material misrepresentations by the defendants were malicious.

82.    Plaintiff, not being an investment banker, securities dealer, mortgage lender, mortgage broker, or mortgage lender, reasonably relied upon the representations and/or omissions of the defendants in agreeing to execute the mortgage loan documents.

83.    Had Plaintiff known of the falsity of defendants' representations and/or omissions, Plaintiff would not have entered into the transaction which is the subject of this action.

84.     As a direct and proximate cause of the defendant's material omissions and material misrepresentations, Plaintiff has suffered damages in such amounts as shall be proven at the time of trial.

COUNT VI

BREACH OF FIDUCIARY DUTY

85.     Plaintiff reaffirms and realleges the above paragraphs 1-84 inclusive hereinabove as if set forth more fully hereinbelow.

86.     Defendants, by their actions in contracting to provide mortgage loan services and a loan program to Plaintiff which was not only to be best suited to the plaintiff given her income and expenses but by which Plaintiff would also be able to satisfy her obligations without risk of losing her home, were "fiduciaries" in which Plaintiff reposed trust and confidence, especially given that Plaintiff was not and is not an investment banker, securities dealer, mortgage lender, mortgage broker, or mortgage lender.

87.     Defendants breached their fiduciary duties to the Plaintiff by fraudulently inducing Plaintiff to enter into a mortgage transaction which was contrary to the Plaintiff's stated intention of having loan terms she could afford to repay; contrary to the Plaintiff's interests; and contrary to the Plaintiff's preservation of her home.

88.     As a direct and proximate result of the defendants breaches of their fiduciary duties, Plaintiff has suffered damages in such amounts as shall be proven at the time of trial.

89.     Under the totality of the circumstances, the defendant's actions were willful, wanton, intentional, and with the callous and reckless disregard for the rights of

the Plaintiff justifying an award of not only actual compensatory but also exemplary punitive damages to serve as it turned not only is the future conduct of the named defendants herein, but also to other persons or entities with similar inclinations.

## COUNT VII

### UNJUST ENRICHMENT

90.     Plaintiff reaffirms and realleges the above paragraphs 1-89 inclusive hereinabove as if set forth more fully hereinbelow.

91.     Defendants have an implied contract with the Plaintiff to ensure that the Plaintiff understood all fees which would be paid to the defendants to obtain credit on Plaintiff's behalf, and to not charge any fees which are not related to the settlement of the loan and without full disclosure to Plaintiff.

92.     Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits on multiple loan transactions, including but not limited to, reselling mortgages and notes using Plaintiffs identities, credit scores and reputation without consent, right, justification or excuse, and gains.

93.     Defendants have been unjustly enriched at the expense of the Plaintiff, and maintenance of the enrichment would be contrary to the rules and principles of equity.

94.     Plaintiff thus demands restitution from the defendants including attorneys' fees, costs and expenses.

## COUNT VIII

### CIVIL CONSPIRACY

95.    Plaintiffs reaffirm and reallege the above paragraphs 1-94 inclusive hereinabove as if set forth more fully hereinbelow.

96.    In connection with the application for and consummation of the mortgage loan which is the subject of this action, and the subsequent sale and purchase of said mortgage loan, defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one of more overt acts in furtherance of the conspiracy to defraud the Plaintiff.

97.    Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiffs.

98.    The actions of the defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiff.

99.    As a direct and proximate result of the actions of the defendants in combination resulting in fraud and breaches of fiduciary duties, Plaintiff has suffered damages.

100.    Plaintiff thus demands an award of actual, compensatory, and punitive damages.

## COUNT IX

## COMPLAINT TO QUIET TITLE

101.    Plaintiff reaffirms and realleges the above paragraphs 1-100 inclusive hereinabove as if set forth more fully hereinbelow.

102.    Plaintiff has given notice of her intent to rescind the subject loan transaction but has only sent those notices to the only entities that have been disclosed. Hence, without this action, neither the rescission nor the reconveyance which the Plaintiff is entitled to file, gives Plaintiff full and clear title to the property.

103.    Plaintiff is informed and believes and thereupon allege that each of the defendants claim or may claim an interest in the property adverse to Plaintiff herein. However, the claims of said defendants are without any right whatsoever, and said defendants have no legal or equitable rights, claim, or interest in said property.

104.    Plaintiff therefore seek a declaration that the title to the subject property is vested in Plaintiff alone and that the defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that the defendants and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein.

105.    Wherefore, in this Count, Plaintiff prays this Court will enter judgment against defendants and each of them, as follows:

105.1.  For an order compelling said defendants, and each of them, to transfer or release legal title and alleged encumbrances thereon and possession of the subject property to Plaintiffs herein;

105.2.  For a declaration and determination that Plaintiff is the rightful holder of title to the property and the defendants herein, and each of them, be declared to have no estate, right, title or interest in said property;

105.3.  For a judgment forever enjoining said defendants, and each of them, from claiming any estate, right, title or interest in the subject property;

105.4.  For costs of suit herein;

105.5.  For such other and further relief as the court may deem proper.

## COU NT X

## MISTAKE

106.   Plaintiffs reaffirm and reallege the above paragraphs 1-105.5 inclusive hereinabove as if set forth more fully hereinbelow.

107.   If the above mentioned wrongful acts and/or omissions of Parker and/or PCG and/or WCLG were not fraudulent misrepresentations and/or omissions of material facts, then the transaction was entered into based upon mutual mistake on the part of the Parties hereto, which entitles Plaintiff to rescission of the note and mortgage and reimbursement of all monies that she paid and/or were paid on her behalf, including all fees and costs paid to obtain the loan, together with damages in such amounts as shall be proven at the time of trial.

## COU NT XI

## UNCONSCIONABILITY

108.   Plaintiff reaffirms and realleges the above paragraphs 1-07 inclusive hereinabove as if set forth more fully hereinbelow.

109.   Plaintiff placed her trust and confidence in defendants to make proper and timely disclosures of loan terms and consumer rights, and properly qualify her for the loan, among other things.

110.   Plaintiff did not understand the loan transaction, or the true terms of the note and mortgage, and were not fully and timely informed of the same by defendants, who held superior bargaining power over Plaintiff.

111.    As a result of the above, the terms and conditions of the note and mortgage are unconscionable, and Plaintiff is entitled to rescission of the note and mortgage and repayment, reimbursement and/or indemnification of all monies that were paid by her or on her behalf, together with damages in such amounts as shall be proven at the time of trial.

COU NT XII

UNFAIR AND DECEPTIVE ACTS OR PRACTICES

112.    Plaintiff reaffirms and realleges the above paragraphs 1-111 inclusive hereinabove as if set forth more fully hereinbelow.

113.    Plaintiff is a "consumer" as that term is defined in H.R.S. § 480-1.

114.    The described acts and practices involved "trade or commerce" as that term is used in H.R.S. § 480-2(a).

115.    An unfair or deceptive act or practice (hereinafter referred to as "UDAP") in the conduct of any trade or commerce is unlawful pursuant to H.R.S. § 480-2(a).

116.    Certain deceptive trade practices are also unlawful pursuant to H.R.S. § 481A-3.

117.    In connection with the subject loan, Defendants engaged in UDAPs that violate H.R.S. § 480-2(a) and or 481A-3, including but not limited to:

117.1.  Targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products.

117.2.  Failing to adequately disclose the true costs and risks of the subject loans and their inappropriateness for Plaintiff.

117.3.  Failing to consider Plaintiff's ability to sustain the loan payments.

117.5.  Making a loan that resulted in little net economic benefit to

Plaintiff with the primary objective of generating fees.

117.6.   Attempting-to deprive Plaintiff of her legal right to cancel the subject loan.

117.7.   Defendants' violations of TILA in connection with the subject loan(s) constitute UDAPs in violation of H.R.S. §§ 480-2(a) and/or 48IA-3.

118.   The conduct caused Plaintiff to suffer injury to herself and her Property, including without limitation wrongfully induced payment of money.

119.   Defendants' described acts and practices offend established public policy and/or were immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and were therefore <u>unfair</u> in violation of H.R.S. § 480-2(a).

120.   Defendants' described acts and practices involved material representations, omissions or practices that were likely to mislead consumers acting reasonably under the circumstances, and were therefore deceptive in violation of H.R.S. §§ 480-2(a) and/or 481A-3.

121.   Pursuant to H.R.S. § 480-12, a contract or agreement in violation of H.R.S. Chapter 480 is void and is not enforceable at law or in equity.

122.   Pursuant to H.R.S. § 480-13(b)(1), a consumer who is injured by a UDAP is entitled, for each UDAP, to be awarded a sum not less than S1,000 or threefold any damages he or she sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit.

123.   The aforementioned wrongful acts and/or omissions of Lender or its predecessors and/or its employees and agents constitute unfair and deceptive acts and

practices in the conduct of business in violation of federal (15 USC Sec. 1802 et seq.) and state laws (HRS Sec. 480-2 and 480-13).

124.    The wrongful acts and/or omissions of defendants or its predecessors and/or its employees and agents were a substantial factor and/or proximate cause of Plaintiff suffering various injuries and damages in such amounts as shall be proven at the time of trial.

## COU NT XIII

## FAILURE TO ACT IN GOOD FAITH

125.    Plaintiff reaffirms and realleges the above paragraphs 1-124 inclusive hereinabove as if set forth more fully hereinbelow.

126.    Defendants owed Plaintiff a duty to deal with her in good faith and in a fair manner.

127.    Defendants failed to deal with Plaintiff in good faith and in a fair manner by making various misrepresentations of material fact and/or omissions of material fact, not disclosing the loan terms, not providing loan relief and/or modification of loan terms so Plaintiff could maintain her interest in the Property.

128.    The wrongful acts and/or omissions of Defendants were a substantial factor and/or proximate cause of Plaintiff suffering various injuries and damages.

129.    As a result of the wrongful acts and/or omissions of Defendants, Plaintiff is entitled to various remedies including, but not limited to, rescission, reimbursement, equitable recoupment, indemnification, damages (statutory, actual, punitive, and treble damages), attorneys fees and costs, and injunctive relief.

COU NT XIV

RECOUPMENT

130.    Plaintiff reaffirms and realleges the above paragraphs 1-129 inclusive hereinabove as if set forth more fully hereinbelow.

131.    As a result of the various wrongful acts and/or omissions made by defendants, Plaintiff is entitled to equitable recoupment of all monies paid by her with regard to the subject loan transactions, including all broker's fees and commissions, closing costs, all other fees, costs and expenses, interest and principal payments that were made, and the loss of the value of her investment in the Property.

COU NT XV

NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL

DISTRESS

132.    Plaintiff reaffirms and realleges the above paragraphs 1-131 inclusive hereinabove as if set forth more fully hereinbelow.

133.    Defendants owed Plaintiff a duty to avoid negligently and/or intentionally inflicting severe mental and emotional distress upon Plaintiff.

134.    Defendants breached their duties by causing Plaintiff to suffer severe mental and emotional distress, by misleading her, providing a loan product she was not properly qualified for, in causing her to lose her savings, by giving her false hope she would qualify for a loan on terms she could afford that would allow Plaintiff to keep her interest in the Property, among other things.

135.    The wrongful acts and/or omissions of defendants were a substantial factor and/or proximate cause of Plaintiff suffering injuries and damages.

136.    As a result of the wrongful acts and/or omissions of defendants, Plaintiff is entitled to various remedies including, but not limited to, rescission, reimbursement, equitable recoupment, indemnification, damages (statutory, actual, punitive and/or treble damages), attorneys' fees and costs, and injunctive relief.

COU NT XVI

USURY AND FRAUD

137.    Plaintiff reaffirms and realleges the above paragraphs 1-136 hereinabove as if set forth more fully hereinbelow.

138.    Plaintiffs are informed and believe and thereupon allege that at all times material herein each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

139.    Defendants disguised the transaction to create the appearance of the lender being a properly charted and registered financial institution authorized to do business in Hawaii and enter into the subject transaction when in fact the real party in interest was not disclosed to the Plaintiff, as aforesaid, and neither were the various fees, rebates, refunds, kickbacks, profits and gains of the various parties who participated in this unlawful scheme.

140.    Said real parties in interest, i.e., the source of funding for the loan, was neither a financial institution or an entity or person authorized, chartered or registered to do business in the state nor to act as banking, lending or other financial institution anywhere else.

141.    As such, this fraudulent scheme, (which was in actuality a plan to trick the Plaintiff into signing what would become a negotiable security was in fact a sham to use Plaintiff's interest in the real property to collect interest in excess of the legal rate.

142.    The transaction involved a loan of money pursuant to a written agreement, and as such, subject to the rate limitation set forth under state and federal law.  The "formula rate" reference in those laws was exceeded.

143.    Under applicable law, the interest charged on this usurious mortgage prevents any collection or enforcement of principal or interest of the note, voids any security interest thereon, and entitles the Plaintiff to recover all money or value paid to defendants, plus treble damages, interest, and attorneys fees.

144.    Under applicable law Plaintiff is also entitled and demands a permanent injunction be entered against the defendants (a) preventing them from taking any action or making a report in furtherance of collection on this alleged debt which was usurious, as aforesaid (b) requiring the records custodian of the county in which the alleged mortgage and other instruments are recorded to remove same from the record, (c) allowing the filing of said order in the office of the clerk of the property records of the subject property.

## COU NT XVII

### VIOLATION OF HAWAII REVISED STATUTES CHAPTER 667

145.    Plaintiff reaffirms and realleges the above paragraphs 1-144 inclusive hereinabove as if set forth more fully hereinbelow.

146.    Hawaii Revised Statutes Chapter 667, and more specifically section 667-5 et seq. provides, in part, that when any mortgagee or its successor in interest intends to

foreclose under power of sale, they shall be represented by an attorney who is licensed to practice law in the state is physically located in the state who shall give notice of the intent to foreclose by publication of notice once in each of three successive weeks, the last to be not less than 14 days before the date of sale, in a newspaper having a general circulation in the county which the mortgage property lies, and to post said notice on the premises not less than 21 days before the date of sale; and to record an affidavit of sale by the person conducting the foreclosure showing compliance with the requirements of the power of sale and the statute.

147.   In this case, based on information and belief, the mortgagee or its successor in interest were not represented by an attorney licensed to practice law in the state who was physically located in the state, and the notice of intent to foreclose was not published once in each of three successive weeks the last to be not less than 14 days before the date of sale in a newspaper having a general circulation in the county in which the mortgaged property lies, and Plaintiff was not notified at least 21 days before the date of sale.

148.   Thus, the foreclosure under power of sale is invalid and Plaintiff is entitled to one or more of the following remedies:

148.1.  (a)     Return of the property;

148.2.  (b)     Actual damages in an amount to be determined at trial, and

148.3.  (c)     Attorney's fees and costs.

COUNT XVIII

VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

149.    Plaintiff reaffirms and realleges the above paragraphs 1-148 inclusive hereinabove as if set forth more fully hereinbelow.

150.    The Fair Debt Collections Practices Act (FDCPA), 15 USC Sections 1692-1692p as amended by Pub. L. 109-351, Sections 801-02, 120 Stat. 1966 (2006), Section 809 requires among other things, that within five days after the initial communication with the consumer in connection with the collection of any debt, the debt collector shall send the consumer written notice containing the amount of the debt, the name of the creditor, and that the consumer may dispute the debt within 30 days, and if the consumer notifies the debt collector that the debt or any portion thereof is disputed, it shall cease collection of the debt until it verifies the debt or the name and address of the original creditor and this is mailed to the consumer.

151.    Defendants have failed and refused to provide Plaintiff with notices required by the Fair debt Collection Practices Act.

152.    Pursuant to section 813, defendants are liable to plaintiffs in amount equal to the sum of actual damages and such additional damages as the court may allow not exceeding $1000, and the costs of action together with reasonable attorney's fees.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands Judgment against Defendants, jointly and severally, as follows:

1.    For a judgment of Rescission.

2.    For a judgment awarding Statutory damages in such amounts as shall be shown at the time of trial.

3.      For a judgment awarding actual damages in such amounts as shall be

proven at the time of trial.

4.      For a judgment awarding treble damages.

5.      For a judgment awarding punitive damages in such amounts as shall be

proven at the time of trial.

6.      For a Temporary Restraining Order or Order for Injunctive Relief.

7.      For a judgment of recoupment, reimbursement and/or indemnification in

such amounts as shall be proven at the time of trial.

8.      For such other and further relief as the Court deems just and equitable in

the premises

DATED:  Honolulu, Hawaii _____ SEP 1 0 2010 _____.

                                        RRH & ASSOCIATES, ATTORNEYS AT LAW LLLC
                                        A Limited Liability Law Company


                                        _Robin R. Horner_
                                        _____
                                        ROBIN R. HORNER
                                        Attorneys for Plaintiff